IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

KENNETH E. CECIL,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          CIVIL ACTION NO. 5:08-00167
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

M E M O R A N D U M   O P I N I O N

        This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-

1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment

on the Pleadings. (Document Nos. 12 and 14.) Both parties have consented in writing to a decision

by the United States Magistrate Judge. (Document Nos. 4 and 5.)

        The Plaintiff, Kenneth E. Cecil (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on August 13, 2004, alleging disability as of March 1, 2002, due to back problems,

hearing loss in both ears, depression, headaches, problems sleeping, prostate problems, ulcers,

stomach problems, nerves, pain in his legs and knees, and joint pain.[1] (Tr. at 25D, 212-14, 234.) The

---

[1] Claimant filed prior applications for DIB and SSI on October 22, 2002, which were denied
initially on March 31, 2003, and on reconsideration on June 23, 2003. (Tr. at 17, 25D.) On July 29,
2003, Claimant requested a hearing before an ALJ. (Tr. at 17.) The hearing was held on July 29,
2003, before the Honorable Arthur L. Conover. (*Id.*) By decision dated February 28, 2004, the ALJ
determined that Claimant was not entitled to benefits. (Tr. at 17-25.) The Claimant did not further
pursue his claims. (Tr. at 25D.)

claim was denied initially and upon reconsideration. (Tr. at 180-82, 188-90.) On March 30, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 191.) The hearing was held on June 1, 2006, before the Honorable Valerie A. Bawolek, and a supplemental hearing was held on November 7, 2006. (Tr. at 448-81, 482-512.) By decision dated December 29, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 25D-T.) The ALJ's decision became the final decision of the Commissioner on February 25, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 10A-C.) On March 14, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to,

3

chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, March 1, 2002. (Tr. at 25F, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from hearing loss, degenerative disc disease, and degenerative joint disease, which were severe impairments. (Tr. at 25G, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 25L, Finding No. 4.) The ALJ

---

in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

then found that Claimant had a residual functional capacity for work at the light level of exertion, with the following limitations:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk about six hours and sit about six hours during an eight-hour workday. He should avoid excessive background noise. He should avoid heights and hazards, temperature extremes, excessive vibration and excessive humidity. He can only occasionally bend and crawl. He requires a sit/stand option. He can push or pull only light weights. He can only occasionally reach to extremes in all directions. Also, he cannot climb ladders, ropes, or scaffolds.

(Tr. at 25L, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 25R, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a bottle packager, garment bagger, and production assembler, at the light level of exertion, and as a printed circuit board assembler, sorter, and surveillance system monitor, at the sedentary level of exertion. (Tr. at 25R, Finding No. 10.) On this basis, benefits were denied. (Tr. at 25S, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on August 29, 1958, and was 47 years old at the time of the administrative hearing, June 1, 2006. (Tr. at 25R, 212, 451.) Claimant had an eleventh grade, or limited, education. (Tr. at 25R, 239.) In the past, he worked as a coal miner. (Tr. at 25R, 235-36, 241-42.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the ALJ erred in not giving substantial weight to the opinion of Sunny S. Bell, M.A. (Document No. 13 at 6-7.) Claimant asserts that Ms. Bell's opinion that Claimant had a severe mental impairment "is supported by her opportunity to examine [Claimant] and by appropriate clinical findings." (<u>Id.</u> at 6.) The ALJ however, discounted her opinion without any explanation except that Ms. Bell's opinion was inconsistent with the evidence of record, including her own examination of Claimant. (<u>Id.</u>) The ALJ did not cite any examples of the inconsistencies and therefore, Claimant is "left to speculate as to her reason." (<u>Id.</u>) Claimant further asserts:

7

> Due to the failure of the Administrative Law Judge to provide controlling weight to the opinion of the plaintiff's examining psychologist regarding the plaintiff's mental functional capacity, without adequate explanation, the Administrative Law Judge's finding that the plaintiff can perform work at the light exertional level without the above-described non-exertional limitations set out by Sunny Bell, M.A., is erroneous.

(Id. at 6-7.)

The Commissioner considers Claimant's argument as a challenge to the ALJ's step two finding of severe impairments and as a challenge to the ALJ's weight accorded an examining opinion. (Document No. 14 at 9-14.) Regarding the step two finding, the Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant's anxiety and depression were non-severe impairments because none of Claimant's treating physicians concluded that his anxiety and depression resulted in significant work-related limitations and because the minimal treatment history does not demonstrate that his mental conditions resulted in such limitations that would preclude his performance of unskilled work. (Id. at 10.) Furthermore, Claimant's statements that he was disabled due to physical impairments, and not because he was depressed or anxious, supports the ALJ's step two finding.

With respect to Ms. Bell's opinion, the Commissioner asserts that the ALJ properly did not afford the opinion significant weight because it was inconsistent with the evidence of record and with her examination of Claimant. (Document No. 14 at 12.) The Commissioner points out that Claimant is mistaken in his contention that Ms. Bell's opinion is entitled controlling weight because Ms. Bell was an examining psychologist rather than a treating psychologist. (Id. at 13-14.) "Although her opinion could have been entitled to more weight, none of the factors that would warrant greater weight were present here." (Id. at 14.)

8

Analysis.

1. Severe Impairment.

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

Regarding Claimant's mental impairments, the evidence of record reflects Claimant's treatment with Dr. Joseph Golden, M.D., at Gulf Family Practice from February 19, 2003, to July 18, 2006, primarily for physical impairments, but also for complaints of depression and anxiety. (Tr. at 384-410, 411-23, 445-46.) On May 19, 2004, Claimant completed a questionnaire on which he indicated that he was sad, felt discouraged about the future and that he had failed more than the

9

average person. (Tr. at 399.) He noted that he did not enjoy the things he once did, that he was disappointed in himself, that he got annoyed or irritated more easily than he once did, and that he had greater difficulty in making decisions than before. (Id.) Nevertheless, he also indicated that he did not feel guilty, as if he were being punished, that he was worse than anyone else, and that he neither cried more than usual nor had suicidal thoughts. (Id.) Claimant further indicated that he was very worried about physical problems and that it was hard to think of much else. (Tr. at 400.) On October 4, 2004, Dr. Golden prescribed Wellbutrin XL 150mg to help with moods, stress, and tobacco cessation. (Tr. at 25J, 391.) On December 9, 2004, his Wellbutrin was increased to 300mg. (Tr. at 388.) On February 7, 2005, Claimant complained that the Wellbutrin left a metallic taste in his mouth, and therefore, Dr. Golden tapered him off Wellbutrin and started him on Effexor XR 37.5mg. (Tr. at 25J-K, 386.) Claimant reported on March 10, 2005, that he stopped taking the Effexor, though he continued to feel moody. (Id.) On June 9, 2005, Claimant reported that he took Wellbutrin on an as-needed basis for his mood. (Tr. at 25K, 385.) On December 27, 2005, Claimant reported that he was not taking Depakote and that he had become more nervous. (Tr. at 25K, 414.) Dr. Golden diagnosed anxiety/depressive disorder. (Id.) Claimant reported on February 13, 2006, that the Nortriptyline, which was given for the depression, made him more anxious and he requested something to help him sleep. (Tr. at 415.)

On February 26, 2005, Dr. Debra L. Lilly, Ph.D., completed a form Psychiatric Review Technique, on which she opined that there was insufficient evidence of a mental impairment prior to Claimant's date last insured, March 31, 2004.[3] (Tr. at 25Q, 361-75.) Dr. Lilly also considered

---

[3] Dr. Lilly stated that "[t]he evidence available to the [prior] ALJ is not available to this review and thus, the claimant's deficits at DLI cannot be determined." (Tr. at 373.)

Claimant's current condition and opined that he had no severe affective or anxiety-related disorder. (Tr. at 25Q, 347-60.)

Claimant underwent a consultative psychological evaluation on June 21, 2006, by Sunny S. Bell, M.A., a Licensed Psychologist. (Tr. at 25K, 423-32.) Ms. Bell noted that Claimant drove himself to the evaluation and traveled approximately ten minutes. (Tr. at 423.) Claimant reported that he was depressed because he was not working and complained of decreased energy, sleep difficulties, irritability, decreased libido, feelings of hopelessness and helplessness, feelings of worthlessness and uselessness, low self-esteem, difficulty with concentration, difficulty making decisions, memory problems, and being withdrawn and apathetic. (Tr. at 25K, 425.) He admitted to vague suicidal thoughts, but denied attempt, plan or homicidal ideation. (Id.) Claimant also reported that sometimes at home, he felt like someone was there but found no one when he looked. (Id.) He further complained of panic attacks. (Id.) Claimant noted that his sleep had improved with medications. (Id.)

Ms. Bell noted that Claimant had never been in psychiatric treatment, though he had been prescribed psychotropic medication by his family physician, which Claimant believe had helped. (Id.) On mental status examination, Ms. Bell observed that Claimant was appropriately dressed and that his grooming and hygiene skills were good. (Tr. at 25K, 426.) He appeared cooperative and motivated, and interacted in a socially appropriate manner, with spontaneous generation of conversation and a sense of humor. (Tr. at 25K, 426-27.) Claimant maintained good eye contact, appeared comfortable, had clear and goal-directed speech that was relevant, had a depressed mood and blunted affect. (Id.) Claimant reported no delusions, obsessions, or phobias. (Tr. at 25K, 427.) Ms. Bell observed that Claimant's judgment, immediate memory, and concentration were within

normal limits, that his recent memory was severely deficient, and that his remote memory was mildly deficient. (Id.) Ms. Bell diagnosed depressive disorder not otherwise specified and panic disorder without agoraphobia. (Tr. at 25K, 428.)

Claimant reported his activities of daily living to include sitting on the porch, watching the news, listening to music, caring for his own hygiene and grooming independently and adequately, helping his daughter with the housework, preparing simple meals, driving when he had to, running errands, taking short walks and sitting outside, going to the post office, and managing his own finances and checkbook. (Tr. 25K, 428.) Regarding social functioning, Claimant denied visiting friends, but admitted to visiting family and attending family gatherings. (Id.) Though he was not dating, he expressed a desire to date. (Id.) He occasionally went out to eat and to the mall. (Id.) Ms. Bell noted that his interaction during the clinical interview and mental status examination was within normal limits. (Id.)

Also on June 21, 2006, Ms. Bell completed a form Medical Assessment of Ability to do Work-Related Activities (Mental). (Tr. at 430-32.) Ms. Bell opined that due to his depression and panic attacks, Claimant had poor ability to deal with work stresses, to demonstrate reliability, and to understand, remember, and carry out complex job instructions. (Tr. 430-31.) She also opined that Claimant's mental impairments resulted in "fair" ability to perform the following activities: relate to co-workers, deal with the public, function independently, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember, and carry out detailed but not complex job instructions. (Id.) Furthermore, Ms. Bell assessed that Claimant had "good" ability to perform the following activities: follow work rules, use judgment, maintain attention and concentration, and understand, remember, and carry out simple job

12

instructions. (Id.)

On July 18, 2006, Dr. Golden assessed significant depression and opined: "Since his depression is a major factor here and unless that improves I am not sure he would be able to focus on being able to apply himself in very limited employment of all situations." (Tr. at 445.) However, the treatment notes fail to reflect any further notation.

Claimant testified at the administrative hearings that he stopped working due to problems with his back, stomach, and knees. (Tr. at 453.) He testified that he drove to the store with his daughter and sometimes visited his mother, which was an approximate forty-five minute drive. (Tr. at 457, 490-91.) He stated that he got out of the house at least two days each week. (Id.) Regarding depression, Claimant testified that he was prescribed Amitriptyline, after having tried other medications but that they resulted in stomach problems. (Tr. at 463.) He reported that Dr. Golden never referred him to a psychiatrist, but treated his depression himself. (Id.) Claimant reported that with medication, he continued to have  problems, with some days better than others. (Id.) He sometimes had problems with concentration and memory. (Tr. at 464.) At the supplemental hearing, Claimant testified that when he worked, he was nervous but that after he stopped working he experienced anxiety attacks, shaking spells, and the inability to focus. (Tr. at 497.) He stated that the only psychiatrist he had seen was Ms. Bell, though his family physician treated his depression and anxiety. (Id.) Claimant testified that the medication did not help much with panic attacks and that he had to remain as still as possible. (Tr. at 498.) Claimant also testified that his depression interfered with his sleeping. (Id.) His depression was constant and he had problems with concentration. (Tr. at 499.) Specifically, he testified that he could read only a little bit before he had to stop due to lack of concentration. (Id.) Claimant further testified that was not able to watch a

13

movie or television show very well due to concentration problems. (Id.) He testified that he sometimes was forgetful and had problems handling stress. (Tr. at 500.)

Regarding activities of daily living, Claimant reported that he watched a television for two or three hours each day, listened to some music, did dishes and assisted his daughter with housework. (Tr. at 464-65.)

Dr. Jeffrey Boggess, who testified at the first administrative hearing on June 1, 2006, as a medical expert, testified that there was very little evidence of a psychological impairment, which did not meet or equal a listing impairment. (Tr. at 478.) He noted that the psychological evidence of record consisted of Dr. Golden's treatment notes and a psychiatric review technique, but that there was no actual Axis I diagnosis. (Id.) Nevertheless, the record contained prescriptions for various medications used to treat mood stabilization and depression, which indicated at least some problem. (Tr. at 478-79.) However, Dr. Boggess noted a Beck Depression Inventory score of 19, which indicated only moderate depression. (Tr. at 479.) He further testified that "for chronic pain situation there's actually different norms and this would put him in actually a mild to moderate level for a chronic pain condition." (Id.) He opined that there was insufficient evidence to find a 12.06 Listing impairment, but there possibly was some level of depression under Listing 12.04. (Id.) The ALJ therefore ordered psychological testing by MMPI and a psychological consultative evaluation. (Tr. at 480.)

In her decision, the ALJ summarized the evidence of record regarding Claimant's mental impairments and concluded that "[a]lthough the claimant has a long history of psychological complaints and has intermittently been prescribed medications for his symptoms, he has never been referred for formal treatment and there is no evidence of significant limitation as a result of his

14

symptoms." (Tr. at 25J-K.) The ALJ therefore, found that Claimant's mental impairments were not severe impairments. (Tr. at 25K.) As the ALJ found, the evidence of record reveals that Claimant was treated by his family physician for complaints of depression, nervousness, and anxiety. However, Dr. Golden obviously determined that Claimant's complaints and symptoms did not warrant additional treatment, because he never referred him for formal mental health treatment. Moreover, the medications Dr. Golden prescribed were taken only on an as needed basis. Furthermore, the evidence of record, including Dr. Golden's treatment notes, do not reflect any significant limitations resulting from Claimant's depression and anxiety. As the Commissioner notes, Ms. Bell assessed deficiencies in Claimant's memory skills, but these deficiencies would not preclude the performance of unskilled work consisting of only simple duties. Finally, as the Commissioner points out, Claimant reported on several occasions that he was disabled due to only physical impairments, and specifically reported to Ms. Bell that he applied for disability benefits because he had "a lot of back pain." (Tr. at 424.)

At step two of the sequential analysis, the evidence, as set forth above, clearly demonstrates that Claimant's mental impairments did not significantly limit his ability to perform basic work activities. Accordingly, the ALJ's finding that Claimant's mental impairments were not severe impairments is supported by substantial evidence

2. Medical Source Opinions.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on

all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

16

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions."

Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any

18

findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

As the Commissioner notes, Ms. Bell is not a "treating source" whose opinion is entitled to controlling weight under the Regulations. Rather, she performed a one-time examination of Claimant, as she noted. (Tr. at 424-32.) Thus, the ALJ was not bound to give her opinion controlling

19

or "great" weight. <u>See</u> 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2) (2006). The ALJ properly considered the opinion when she noted the report in her decision, but gave it little weight. (Tr. at 25Q.) The ALJ noted that on mental status examination, Claimant's social functioning, concentration, persistence, and pace were within normal limits, but that he had a depressed mood and blunted affect. (Tr. at 25K.) Ms. Bell further noted that Claimant interacted in a socially appropriate manner, spontaneously generated conversation, exhibited a sense of humor, maintained good eye contact, and appeared comfortable. (Tr. at 426-27.) Yet, in her assessment, Ms. Bell reported that Claimant had fair, or limited ability, to function independently, deal with the public, interact with co-workers and supervisors, and behave in an emotionally stable manner. (Tr. at 25Q.) As the ALJ determined, Ms. Bell's assessed limitations were inconsistent with her findings on examination. (<u>Id.</u>) As the Commissioner notes, Ms. Bell noted on examination that Claimant's grooming and hygiene skills were good and that he was casually and appropriately dressed. (Tr. at 426.) Nevertheless, she assessed Claimant's ability to maintain personal appearance as fair. (Tr. at 25Q, 431.) Accordingly, the ALJ's decision to give little weight to Ms. Bell's opinion because it was inconsistent with her own evaluation is supported by substantial evidence.

The ALJ further found that Ms. Bell's opinion was inconsistent with the other evidence of record. (Tr. at 25Q.) As discussed above, the evidence of record reveals an absence of treatment by a mental health specialist, and minimal treatment by Claimant's family physician. Dr. Boggess opined that given the absence of such treatment, and the presence of only general conservative treatment, Claimant's mental impairments were non-severe impairments. (Tr. at 25Q, 478.) Dr. Boggess also noted that there was no actual Axis I diagnosis from Claimant's treating physician. (<u>Id.</u>) Likewise, Dr. Lilly opined that the evidence was insufficient to support a finding of a severe

mental impairment. (Tr. at 25Q, .) The ALJ accorded these opinions significant weight because they were supported by the minimal evidence of record. As discussed above, the only other evidence of record was from Dr. Golden, which indicated minimal complaints of depression and anxiety and intermittent treatment with medications. Additionally, Claimant points to no evidence that Ms. Bell's findings on examination would translate into difficulties in the workplace. Accordingly, the Court finds that the ALJ's decision to give little weight to Ms. Bell's opinion because it was inconsistent with the other evidence of record is supported by substantial evidence. The ALJ properly evaluated Ms. Bell's opinion and gave it little weight in light of her evaluation report and the other evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge